# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01085-SCT

*CHARLIE CHRISTOPHER COLLINS*

*v.*

*DEBORA H. COLLINS*

*and*

*DEBORA H. COLLINS*
*v.*
*CHARLIE CHRISTOPHER COLLINS*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/97 |
| TRIAL JUDGE: | HON. WILLIAM L. GRIFFIN, JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MARK W. PREWITT |
| ATTORNEY FOR APPELLEE: | DAVID M. SESSUMS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/15/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/5/98 |

**BEFORE SULLIVAN, P.J., MILLS AND WALLER, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Debora Collins (hereafter Debbie) filed a complaint for a divorce on October 9, 1996, on the grounds of habitual cruel and inhuman treatment or, in the alternative, for irreconcilable differences. The contested divorce was bifurcated and Debbie was granted a divorce on April 14, 1997, the same

day the hearing concluded. Final Judgment for divorce was entered on April 22, 1997. On May 14, 1997, the chancellor heard testimony from the parties and received evidence regarding the remaining issues of child support, alimony and equitable distribution of marital assets. Shortly thereafter on May 22, 1997, the chancery court issued its ruling regarding these issues. Aggrieved by this ruling, Debbie filed a motion to reconsider on June 4, 1997, and as a result of this motion, the lower court issued its Amended Ruling dated June 5, 1997. By Judgment dated June 30, 1997, which incorporated the amended ruling of the court, Debbie was granted custody of the minor child, Jonathan Collins, born December 30, 1988, and Charlie Collins (hereafter Chris) was ordered to pay monthly child support of $450.00, plus he was ordered to pay an additional $300.00 per month in private school tuition payments. The Chancellor also ordered equitable distribution of the marital assets by awarding Debbie assets valued at $297,080.00 and awarding Chris assets valued at $297,071.00. Aggrieved from the final Judgment Debbie filed this appeal on July 1997.

¶2. This appeal raises the following issues: (1) whether a chancellor may consider private school tuition as part of necessary child support and whether the amount awarded in this case is adequate, and (2) whether the chancellor correctly computed the assets of the parties in his division of marital property.

### *Child Support*

¶3. An award of child support is a decision vested within the discretion of the trial judge. When reviewing findings of fact made by a chancellor regarding the amount of child support to be awarded, this Court will not disturb such findings "(unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard)." ***Knutson v. Knutson***, 704 So. 2d 1331, 1332 (Miss. 1997) (*quoting **Johnson v. Johnson***, 650 So. 2d 1281, 1285 (Miss. 1994)); ***Henderson v. Henderson***, 703 So. 2d 262, 264 (Miss. 1997) (*quoting **Johnson v. Johnson***, 650 So. 2d 1281, 1285 (Miss. 1994)).

¶4. Debbie contends the $450.00 award of child support is inadequate and the additional $300.00 the chancery court ordered Chris to pay for the minor child's private school tuition should not be combined to determine the total monthly child support award. Debbie argues the combining of private tuition with monthly child support is improper. However, Debbie considered this same tuition of $300.00 per month in her sworn financial disclosure when she claimed this tuition was paid by her. In addition, both Debbie and Chris informed the court that they were in agreement their child should continue to attend the private Catholic school in Vicksburg. More importantly, Chris volunteered to pay private school tuition so long as the amount he paid for tuition was considered along with the amount he paid for child support.

¶5. Debbie argues the lower court erred in not setting the amount of child support recommended by Section 43-19-101 of the Mississippi Code of 1972. This section provides guidelines for the determination of the correct amount of child support Chris is required to pay based on the recommended percentage of his adjusted gross income. The statutory percentage for one child is 14% of the adjusted gross income. Miss. Code Ann. § 43-19-101 (1993). "These guidelines are not mandatory as to the specific need or support required; rather, the chancellor is to make the determination based on the facts he hears, the witnesses he views, and the circumstances of the parties, especially the child." ***Bruce v. Bruce***, 687 So. 2d 1199, 1202 (Miss. 1996) (*citing **Gillespie***

*v. Gillespie*, 594 So. 2d 620, 623 (Miss. 1992)). The lower court in its amended ruling of June 5, 1997, set forth very detailed reasons based upon established facts as to the method and manner of setting the amount of child support.

¶6. Debbie also argues Chris volunteered to pay private school tuition and he could more than amply afford the additional cost, above child support, on his annual adjusted gross income. She further argues that to consider this tuition as child support, encourages parents to send their children to private school and leave the onus of monthly food, clothing and shelter on the custodial parent. This is not what happened here. The parties were in agreement that the son should remain in the private school, and Chris testified he was willing to pay for the tuition if it was considered part of his child support obligation.

¶7. The chancellor determined that Chris's adjusted gross income was $5,560.00 per month. Fourteen (14%) of this sum on a monthly basis is $778.00. The Court ordered Chris to pay $450.00 directly to Debbie and $300.00, plus any increases in tuition, to the child's school. This amount as the chancellor pointed out is very close to the statutory guideline. The chancellor did set out detailed written findings in light of the statutory guidelines. He made reference to the guidelines and explained his reasoning in determining the correct amount of child support and how the total amount ordered is close to the guideline set by the legislature. This is what the statute as well as case law requires the chancellor to do. *See* Miss. Code Ann. § 43-19-101(4) (1993) and **Knutson v. Knutson**, 704 So. 2d 1331, 1335 (Miss. 1997).

¶8. The chancellor in his amended ruling also considers the relevant factors this Court set out in **Gillespie v. Gillespie,** 594 So. 2d 620 (Miss. 1992). In particular he considered the income and earning capacity of both Debbie and Chris and the reasonable needs of the child. The chancellor found that "$900.00 per month is the maximum necessary to support the minor child of the parties. One half of that amount is $450. Each of these parties is well able to contribute equally to the support of the minor child."

¶9. This Court finds the total award for support of the minor child is adequate. Although private school tuition should not be awarded in some factual circumstances, in this case the parties agreed that the child should continue to attend the private school and the child's basic needs are still adequately provided for in light of the total amount ordered and the financial disclosures of both parties. Hence, we find the chancellor did not abuse his discretion when ordering the combination of child support payable to Debbie and support type payments paid directly to the private school on behalf of the minor son based on the agreement between the parties.

*Division of Assets*

¶10. This Court has explained the factors a chancellor needs to consider when dividing marital assets. **Ferguson v. Ferguson**, 639 So. 2d 921, 928 (Miss. 1994). In addition, this Court has directed the chancery courts "to support their decisions with findings of fact and conclusions of law for purposes of appellate review." **Id.** In the case *sub judice* the chancellor adhered to our directive. The chancellor set out detailed findings regarding all of the property owned by both parties, whether it was held jointly or individually. In the amended ruling, the chancellor stated that he considered the length of the marriage, the marital fault of Chris, and the contributions of both Debbie and Chris toward the accumulation of the assets that comprise the marital estate. As this Court has previously stated, there

is no automatic right to an equal division of jointly accumulated property for it is left to the discretion of the court how assets are to be divided in light of all the factual circumstances. *Sarver v. Sarver*, 687 So. 2d 749, 754 (Miss. 1997). In the case *sub judice* the chancellor, after considering all the factual circumstances stated, "[t]he Court finds that an equitable distribution of the real and personal marital assets would be to grant each party one-half of the value of the assets accumulated during the period of the marriage."

¶11. Debbie contends that although the chancellor attempted to divide said assets equally between the parties, he applied the wrong formula. Debbie complains: 1) the chancellor used gross value in computing all marital assets of the parties except when computing the value of the marital residence and treated the marital home as nonmarital property, and 2) the chancellor added to Debbie's award a $12,000.00 equitable credit. Both of these concerns are without merit and will be addressed separately.

### The Marital Residence

¶12. The court valued the marital home at $260,000.00, and found the mortgage on the home was $186,000.00. The chancellor based this value on two independent appraisals of the marital home. Chris was awarded sole ownership of the marital residence and sole responsibility for the mortgage remaining on the home. The value of the three businesses was stipulated by the parties. The husband's vision clinic was valued at $175,000.00, the home health agency was valued at $180,000.00, and the Bottled Water Company was valued at $22,500.00. The chancellor found the value of all assets totaled $783,151.00 with a total of $597,151.00 of equity. "The liabilities as well as the assets of the parties must be taken into consideration when the chancellor effects an equitable distribution of marital and any other relief that may be appropriate such as alimony or child support." *Bullock v. Bullock*, 699 So. 2d 1205, 1212 (Miss. 1997) (*citing Gambrell v. Gambrell*, 650 So.2d 517, 522 (Miss.1995)).

¶13. Although Debbie asserts the court used gross values in computing all marital assets of the parties except when computing the value of the marital residence, the record does not support this assertion. The chancellor properly considered both the value of the assets and any outstanding debt attached to the assets. When the court arrived at the equitable distribution award, Debbie was awarded $297,080.00 and Chris was awarded $297,071.00. Debbie received as her sole and separate property several items including but not limited to her IRA, her retirement accout, ownership of Chris's 50% interest in the bottled water company and complete ownership of the Home Heath Agency. Chris received as his sole and separate property several other items including but not limited to his IRA, his retirement account with the Home Health Agency, his interest in the Vision Clinic and sole use, possession and title to marital residence, including the equity and full responsibility for the debt owed against the residence. A total recap of the equitable division of all marital assets is contained in the Amended Ruling.

¶14. Debbie also claims the chancellor was in error in awarding the marital home to Chris. She contends the chancellor failed to treat the marital home as marital property. We disagree. The record reveals the chancellor considered the marital home to be marital property and fashioned an equitable distribution when considering the equity value of the home together with the equitable value of all other marital assets. In fact, the chancellor determined that all of the assets were marital property.

¶15. This Court has previously recognized that "an equitable division of property does not necessarily mean an equal division of property." *Chamblee v. Chamblee*, 637 So.2d 850, 863- 64 (Miss.1994). But in the case *sub judice*, the chancellor decided that an equitable distribution should be an equal distribution and that is what he did. Debbie's contention that she was cheated out of her share of the equity of the marital home is without merit.

*The Equitable Credit*

¶16. Debbie next argues the chancellor erred when he gave Chris an equitable credit of $12,000.00. She argues the chancellor should not have given Chris an income credit of $12,000.00 in her Home Health Agency when no services were performed by him for payment of the same.

¶17. Prior to the separation of the parties, Chris was an officer in Collins-Haworth Home Health Agency and Debbie was the president. Before Chris's employment was terminated, Chris drew a salary from Collins-Haworth of $28,141.00 as reflected by his 1996 Federal Income Tax Return. In return, Chris testified that he signed notes at the Bank for purchase of the corporation and to cover cash flow problems, attended meetings with accountants and served as assistant administrator when Debbie was away. The record also substantiates the fact that Chris attended several Board of Directors meetings.

¶18. Chris testified that his termination was not approved by the corporation. Chris asserts that Debbie terminated his employment from the agency out of spite. Regarding the equitable credit given to Chris, the chancellor stated in the Amended Ruling:

> The Husband's 1996 Federal Income Tax Return reflects income from the Home Health Agency of $28,141. However, the Husband and Wife both testified that the Wife unilaterally stopped Husband's income from this source in December, 1996. The Wife contends that she did not and cannot retrieve this money for herself. In any event, this is money that the Husband could have and did not receive and , while the Wife contends in her Motion to Reconsider that this is not ". . . money in Debbie's pocket. . . .", it is money she took from his pocket. Therefore, the Court finds that the Wife's actions have cost the Husband $12,000 and that he is entitled to an equitable credit for this amount regardless of whether the Wife received it or not.

¶19. One of the factors this Court has said a chancery court should consider when awarding an equitable distribution of assets is "[t]he degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets." *Ferguson*, 639 So. 2d at 928. The $12,000.00 equitable credit awarded directly relates to this factor since Debbie did withdraw marital assets, ie., in the form of income paid to Chris from the home health agency. Furthermore, the issue of equitable distribution is "committed to the discretion and conscience of the chancellor, having in mind all the equities and other relevant facts and circumstances." *Sarver*, 687 So. 2d at 754 (citations omitted). This Court finds the chancellor did not abuse his discretion in ordering an equitable credit in the amount of $12,000.00 based on Debbie's unilateral disposition of marital assets when she unilaterally terminated Chris's employment.

**CONCLUSION**

¶20. We find the judgment of the Chancery Court of Warren County should be affirmed in all

respects. The chancellor did not abuse his discretion in the award of child support or the division of marital property. The judgment and the findings of fact made by the chancellor are supported by the record as well as by controlling case law.

¶21. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**